May it please the Court, my name is Jason Morgan and I am the Attorney of Record for the Hawaii Longline Association or HLA. I will be a panelist in this matter. I would like to reserve five minutes for rebuttal and I will try to keep track of my own time. The dispute underlying this case stems from the management of the Hawaii-based Swordfish fishery fleet and the interactions that that fleet has with turtles, specifically loggerhead turtles. But the issue on appeal is actually much narrower. Can a federal agency change the substance of a duly promulgated regulation through a consent decree? And can it do so without compliance with the procedural requirements in the Administrative Procedure Act? And can it do so without observance of the substantive limitations on rulemaking authority under the Magnuson-Stevens Act? That was the main argument raised in HLA's brief. And that's where I'd like to focus the Court's attention today during oral argument. To put a slightly finer point on this, the reason that HLA is appealing here today is because the consent decree completely undoes the results of a three-year public regulatory process. I wasn't going to interrupt you at this point, but hasn't this whole thing been overtaken by events? I mean, this case has set a record for 28 J letters in terms of what's been going on. And it was a temporary remand, and apparently all kinds of stuff has happened between the remand and now, with respect to the turtles, biological opinions, and everything else. And I get the sense that everything that we're talking about, I could be dead wrong on this, may have been overtaken by events. Below, there's a whole new universe of things that have happened that seem to be, maybe subject to other challenges, but currently bulletproof. So, where are we? So, I want to answer that question by sort of breaking out some of the claims that we have in this case. And the main claim that we have in this case is that the regulation, which is promulgated as federal law at 50 CFR 665, that that was an impermissible form of regulatory rule change. That regulation is still in effect. It is operative today, and it remains in effect. At some point in time in the future, the federal government may change that rule. And when they do so, it will be based on a new biological opinion. But until that happens, this is still a live controversy. And as much as I would like to think that the federal government is going to immediately put out these rules, I don't think that I or this court should rely on that fact. There is a political element to all of this that's underlying the consent decree in the first case. We were never given a reason why the previous regulations were withdrawn. We were never explained the reasoning why, whether there was an error, whether there was a problem. We were just told that the regulation was being invalidated. And under those circumstances, I don't think we can assume that new regulations are forthcoming immediately. So I think that is still a live controversy. Whether the number should go back to 46 or it should be a new number, 34, which is what the biological opinion now says, I think it's something that can be worked out on remand with the district court. But it doesn't change the legal issue, I think, that is still alive. As to the biological opinion, we have a claim in our case as well that as the biological opinion, there was an impermissible change to that biological opinion without a factual basis for doing so. That claim, I think, now is technically new as a result of the fact that a new biological opinion has issued. And I think the question that still remains in that case is whether it's capable of repetition yet evading review. And as to that issue, I would note that this is something like the tenth piece of litigation between virtually the same parties and that Turtle Island is not going to like the new biological opinion anymore than they liked the old biological opinion. And this summer, if regulations are promulgated, we'll be back in court again arguing the same issues. And we could be put back in the exact same spot, which is that the federal government can change the regulations based on that biological opinion without public process. So that claim, I think, fits within the rubric of capable of repetition yet evading review. The last claim we have is the abuse of discretion. You said that the government can change it without public process. You mean through another consent decree. And the result of the consent decree, though, did end up where the result was numbers that had resulted in a public process. Was it not? The regulation that was promulgated approximately last January, which set the Turtle Take number at 17, was not the result of a public process. The parties agreed through the consent decree to essentially ask the district court, please order us to promulgate new regulations and please order us to set the new regulations at 17. That's what they did. But the judge didn't order them to do that. He did it. No, he actually ordered them to initiate rulemaking and told them the substance of the rule that they had to issue. They said, set the number in that rulemaking. And they've done that in January. But the numbers that are under the settlement were the numbers that were originally the numbers in the 2004 review, correct? That's correct. The number went back to 17. Revert to the old numbers. And those numbers were subject to a public process. They were, that's right. Okay. So I just wondered, when you said without a public process, it's not like they came up? They or the judge came up with a number out of the blue. Well, I want to drill down on a couple things there that I think you're getting to, which is that isn't this just, you know, putting the old rule back in place while we think about the new rule? And it's not exactly the same rule as before. It's actually a different rule they put in place. The old rule was different. What it said is the turtle hard cap is 17 and will be adjusted annually at the end of each year. What the rule now says is the turtle cap is 17. So that is actually different. That didn't go through a public process. And importantly, you have to understand the public process that happened with setting the 17 number. That was a process that was given to the Western Pacific Fishery Management Council. And they were instructed to determine whether the number 17 was necessary and appropriate to implement Amendment 3 to the Fishery Management Program. They were never asked whether 17 was necessary and appropriate for Amendment 18, which is what currently exists and which was not changed. So the public process was essentially on the wrong thing. And I think that's significant here because we also have to distinguish, too, between the kinds of authority we're talking about here. And I don't think that there's any dispute that if Judge Edra had reached the merits of the case, if he had looked at the substance of the administrative record, had heard the parties of the arguments, and determined that a violation of law had been committed, that there was a legal error involved in this biological opinion, and that he further determined that that legal error was significant enough to warrant vocateur of the rule, and he further determined that that error was serious enough and the facts of the situation required reinstating the old rule, then I don't think there's any dispute that Judge Edra could have done that if he had reached the merits. The question is, can a federal agency do that without reaching the merits, without confession of error? Is that just a power inherent in federal agencies? And I don't think that it can be because federal agencies are creatures of statutes. As a creature of statute, you have only those powers that the law gives you. Their authority to promulgate rules at all in this case is bound by the Administrative Procedure Act and is specifically bound by the limitations on substantive rule-making authority placed in the Magnuson-Stevens Act. Under that rubric, that's not something that the government can voluntarily agree to do. And I think that's maybe part of where the confusion comes in this case, is that there is a standard that I think is accepted that we apply to consent decrees, and that standard comes from Sierra Club, which is, I think, an opinion that was offered by Judge Goodwin. The standard is, does the consent decree violate the law? The standard is further, does the consent decree violate the statute upon which the complaint is based? Now, the question is, how do we apply that standard to a consent decree? And I think what the federal defendants here are arguing is that you look to just the judicial act, and you say, can a judge do this? Is it within judicial authority? And I think that there are circumstances where that is the correct analysis, but it also must be true that the agreement underlying the consent decree is also legal and also does not violate the statute upon which the complaint is based. And I think you see that analysis come forward very clearly in Local No. 93, the U.S. Supreme Court case. The court did both those sets of analyses. There was an argument in that case that said, hey, you can't enter this consent decree because the consent decree requires the city to make affirmative action hires for individuals who are not themselves discriminated against. And Title VII of the Civil Rights Act says, a court may not order affirmative relief for people who are not themselves affected. And the argument was, well, therefore, the consent decree violates that. And the court said, no, it doesn't. As to the judicial act part of that, no, it doesn't, because we see that a voluntary act of affirmative action hire is consistent with the concept. To me, the consent decree here is slightly different because, correct me where I'm wrong, the consent decree seems to be saying nothing more than it goes back to the agency and the agency will follow the rules that govern the agency behavior on figuring out what to do now that things are being elevated from threatened to endangered and circumstances have all changed. So it was a temporary remand just for reconsideration, the way I would put it, by the agency. Isn't that different than the cases you cite? And what's the problem with that? Well, first, I don't know that this really is a temporary remand. The regulation that was put in place under the consent decree is marked as final. And it is final, and there is no sunset provision. If you go to the Code of Federal Regulations, there's no sunset on that. And there's no affirmative obligation in the consent decree for them ever to change that regulation. There's no obligation there. I thought that the consent decree said that this would be in place until the new rule came out. Right. No, the consent decree, sorry. I guess not. I'm very excited. I'm very excited. Excuse me, what did you say? I missed that. What the consent decree says is that the federal government shall initiate rulemaking, and it shall set the number at 17. That's it, and they did that, and the regulation is in effect. I think part of the confusion is that there's this biological opinion that has the number 46, and then there's the regulation that has the number 46, and there was an old biological opinion that had the number 17, and there's a regulation that has the number 17. Those are actually different things. The number 47 and the number 17, or the new number that may be 34, is intended to be the actual number of turtles that will be interacted with in a given year, the maximum number. It's not that 17 is, if you go to 18, you've endangered the species. It's not that if you go from 46 to 47, you've crested over a limit there. It's just here's what we think the actual incidental interaction will be, and that's why the number is set in the regulation as a backstop against that. To follow up also on the, well, let me transition to this point, which is that I'm not sure that there's any dispute in this case that if the standard articulated by this court in Carpenter and in the Fourth Circuit and EBM applies to this agreement, that it wouldn't be found invalid under the case law. The question is, can the federal government violate its own laws under cover of settling litigation? I don't think anyone disputes that that standard of the law applies. It's only a matter of whether there's something different about a consent decree. I'm not sure the other side would accept your statement of the issue. But they were, NMFS was ordered to promulgate a new regulation, and then it was ordered to issue a new biological opinion and accompanied incidental turtle take statement for the fishery within 135 days after making a final determination. This deadline is meant to prevent NMFS from having to redo its biological opinion twice within the span of two years. I mean, it seems it was a temporary remand. That's the way I fairly read it. But the regulation itself is not temporary. There's no obligation to ever change the regulation. And also, I'm not sure that, you know, the fact that if we start from the premise that the voluntary authority of the federal agencies is dictated by statute, they don't have any more authority to temporarily revoke the rule than they do to permanently revoke the rule. They don't have, the APA does not give them authority to do temporary rule changes without public process. It's not something that they have. So whether it's temporary or permanent, the question is, does it allow them to violate the statute on which the law is based? And that I... Was there a stay sought to prevent anything from happening at all? We didn't. And one of the reasons why we didn't seek a stay is because we're actually not afraid of what's going to happen as a result of the new biological opinion. And it turns out, we're right. Once again, the Hawaii Long Line Fleet is not jeopardizing the continued existence of loggerhead turtles. If we had sought a stay and been successful at doing so, then we would have been subject to delaying that process. And if we lost on appeal, ultimately, then we would be even farther out before we get the new biological opinion and get back to what we hope are regulations that accurately reflect science rather than just politics in this case. And with that, I think I'll hold the rest of my time. Thank you. Good morning. May it please the Court, Jennifer Newman for the Federal Defendants. Paul Atchitoff, who represents the Plaintiff Appellees, would also like to address the Court and has requested ten minutes of time. So the parties propose reserving ten minutes for Mr. Atchitoff, unless the Court prefers a different division. NMFS and the plaintiffs here have settled this litigation by agreeing to send some of the agency's decisions back to the agency for further consideration and in the meantime, to temporarily reinstate the prior rules under which the fishery operated. Courts generally encourage this sort of voluntary settlement litigation. And the District Court here did not abuse its discretion in reviewing the consent decree and in agreeing to enter it. In fact, this Court has stated that often the effect of invalidating an agency rule is to reinstate the prior rule. HLA has not shown that the consent decree here violates any statute. Before I get into the merits of the discussion, I would just like to address the point that Judge Trott made about whether or not this has actually been overtaken by events. I think in large part it has, in the sense that you're correct, that there's a new biological opinion that has been issued and the agency is diligently working on new regulations. We did not make a mootness argument to the Court in our numerous 28-J type filings because HLA is correct that the regulation is still on the books at this time, although the agency is working quickly to change that and hopes to do it soon. On the merits of the argument. So, does that suggest we should defer submission and see what happens with the regulation? I think that that would certainly be a reasonable and acceptable course of outcome if the Court would prefer that. Well, that's just one option. I'm just thinking off the top of my head. What's the time frame in which we could expect a new regulation? I can't give you an exact prediction because the agency is still trying to make some decisions. For example, they have to go through a National Environmental Policy Act process, and so they haven't yet decided whether or not they're going to do an environmental assessment or environmental impact statement, and that would affect the timing. I had one of those take 50 years. Oh, well, we certainly hope that it wouldn't take that long, and hopefully this case is a lot less complicated. You got into the litigation on NEPA. But the agency would certainly hope that within the next six months that there would be a new regulation. Just a thought, go ahead. Certainly. I'd like to turn to the merits unless there are further questions about mootness. HLA's basic argument here is that these various statutes, the Magnuson Act, the Endangered Species Act, the Administrative Procedure Act, prohibit NMFs from repealing a regulation for all sorts of reasons. But the thing that they're missing here is that this isn't the agency acting alone. This is the agency going to a court and saying, look, we have this consent decree with the plaintiffs in a lawsuit, and would you evaluate it for its reasonableness, and all of the other standards the courts look at whenever they evaluate a consent decree. And the district court did that here. It made a very thorough evaluation of this consent decree and its standards for entering it. And in that situation, the legislative provisions that HLA point to simply don't limit the court's power to enter a consent decree like that. Are there limits on the type of consent decrees that a court can approve or issue? There certainly are some. For example, there has to be- And did the court here go beyond those limits? I don't think that the court did. And the biggest reason for that is, again, you've got a situation where the provisions of the consent decree are a temporary reversion to a prior rule, which is something that courts commonly do, and it's a resolution of the litigation that was clearly within the scope of the complaint that the plaintiffs had filed. In fact, they raised more challenges than to just the Endangered Species Act. They also raised challenges arguing that the agency action had not complied with the Migratory Bird Treaty Act, for example. What's your leading case on the temporary reversion to the prior rule option? I think that the leading case is probably that case out of the Court of Federal Claims, which talks- It doesn't have the temporary reversion language, but it does talk about how the government's power to settle litigation should include the ability to offer things that are clearly within the scope of what the plaintiffs have asked for. And, for example, HLA doesn't contest that the government could have decided to simply not defend the litigation at all, in which case there would have been many more changes to the regulatory structure. Where does the temporary reversion to the prior rule language come from, then, if the Federal Court of Claims case doesn't have that in there? That language comes, for example, from the Paulson v. Daniels case in this circuit, which talks about that being a common or typical resolution to an Administrative Procedure Act lawsuit. That case did not involve a consent decree, but it does talk about what sort of the core of the judicial power is, and this certainly falls well within that. Thank you. The other point that I wanted to make is that both the 2009 and the 2004 rules were, in fact, adopted in accordance with the procedural requirements of the Magnuson-Stevens Act, as well as the APA. And that's something that's important not to lose sight of. It's not as if the judge was creating this number or the agency was creating these numbers out of whole cloth.  The other side here argues that Carpenter is the case that we should be looking at, and how do you distinguish what occurred here from the Carpenter case? The Carpenter case involved only a settlement agreement, so there had not been this extra step of judicial approval and oversight of the agreement. And in that case, the Court only said that there could be APA review of the agency's decision to enter into the settlement agreement. It did not say that, for example, the government was without the power to enter into the settlement agreement unless it complied with all of the APA rulemaking steps. It only said that the Court had to consider the merits of the case, basically. And so I would say that it doesn't apply here for both of those reasons, both because you have this extra step of judicial oversight over the agreement and because that Court just simply didn't reach the question of whether or not the government had the actual power to enter into a decree like this. I also want to make a point. Counsel for HLA suggests that there is actually a difference here between the 2004 rule and what is in place now in terms of the annual adjustment to the incidental take levels. This was an argument that was new in the reply brief, and it was made here at oral argument. That's simply not true. If you look at the text of the 2004 rule, which is reproduced at the back of HLA's reply brief, it does not say that there will be an annual adjustment to those incidental take levels. And even if HLA were correct about that, I don't know that they would have standing to raise that argument since the elimination of that downward adjustment only has the potential to benefit HLA. I think that another case that is important to this Court's review is the Local 93 case from the Supreme Court, which addressed, again, a slightly different situation, but it does make an important point about the nature of consent decrees, which is that they are, for some purposes, treated as a judicial act, and for other purposes, treated as a voluntary agreement. And here it is that judicial act feature of the consent decree that is important to this Court's review of what happened here. That's the Title VII case? That's right. And, of course, it was interpreting that particular statute and whether or not it limited the Court's power. But the more general language that talks about the nature of consent decrees, I think, is very useful here because the one thing that is missing from all of the cases that HLA cites is, again, this aspect of judicial oversight of the consent decree process. It's not merely a settlement agreement between two individual parties. You had a Court actually looking at whether or not it was procedurally fair, whether or not there had been any sort of collusion going on between the parties, and making factual findings on those issues. Well, again, this gets back to my question. I don't know if you have answered it here. Assuming we affirm the consent decree, is there any limit that you see as to what the AGT and the plaintiff can agree as part of it as long as the judge is involved? I mean, is there any limit? Well, assuming that the judge is making factual findings that are supported by the record, I think that there is at least the power to do what the Court did here, to sort of vacate part of a rule and reinstate the relevant portions of a prior rule, that that is the core of the function. Well, could they agree to a new rule or some other substantive change in the rule? Would that be okay because it was done through a consent decree? I think it would have to clearly fall within what the scope of the complaint was, and that would certainly limit the authority of the government to make agreements that went outside the scope of the complaint. For example, the Fourth Circuit case, I believe it was the Executive Business Media case, is a situation where the government attempted to settle a dispute about the award of one contract by giving the party a totally different contract, and that would certainly be a limit on the government's power. They couldn't go outside of the scope of the consent decree in that way. And there may be other limits. It would certainly be a more difficult case and would require additional fact-finding if, for example, the government wanted to set the incidental take limit at, say, five. That would, in some sense, be within the scope of what the plaintiffs had asked for because they were certainly, at least if you look at the complaint, a theoretical complaint could be asking for the biological opinion to be erased and then just have no fishing until there was a new biological opinion authorizing the incidental take. Now here, the plaintiffs in their summary judgment briefing did say that they were only asking for reversion to the prior 2004 rule, but assuming they hadn't done that. Not to infringe on your colleagues' time, but what happens if we vacate the consent decree, given what's going on underneath all of this? Right. If you vacate the consent decree, the fishery, I think, would then probably be operating under the 2008 biological opinion and regs until they take the action to implement regulations for the new biological opinion. Which is in process at some stage. That's correct. Thank you. Thank you. Please, the Court. Paul Achtoth, appearing for the Plaintiffs Below and Appellees, Kirtle Island Restoration Network, Center for Biological Diversity, and CAHEA. I would like to at least initially direct my arguments to a separate issue of the Court's jurisdiction to hear the appeal. Because I think, of course, it's determinative, and also the fundamental reason why the appeal lacks merit overlaps substantially with the fundamental reason why the Court lacks jurisdiction even to hear it. The proper characterization of this issue is, of the Court's order, is a vocateur, a temporary remand for the purpose of allowing the agency to review Amendment 18's compliance with Section 7 of the Endangered Species Act. What language did Judge Ezra use? Did he use that vocateur, as you pronounce it, language? Yes, he did. Did he style this in any way as an injunction? Oh, absolutely. He styled it as an injunction. And, frankly, what was proposed to him used the term injunction. And if it is an injunction, would he have jurisdiction? If it is an injunction, would you have jurisdiction? Yes. Yes. Yes. So your argument is that it isn't. Yes. If you look underneath the label, it wasn't, and it isn't. Yes. As this Court observed in the Armstrong case, the use of the term injunction is simply not determinative. The Court said in determining the appealability of an interlocutory order under 28 U.S.C. Section 1292A1, we look at its substantial effect rather than its terminology. So no matter whether the term injunction was used or how many times it was used, we have to look beneath that and look at its substantial effect. Substantial effect of this decree was to vacate, to reinstate a relevant portion of the status quo ante on a temporary basis. That was the entire intent of the parties and, I believe, the intent of the Court. Did the remand order direct any action to be taken or to be stopped? The remand directed that the government put in place a new regulation that would have the sole purpose of reinstating a portion of the status quo ante. Doesn't that sound a little bit like an injunction? It certainly tells them that they need to do something, but the point that I would like to make is that it's accepted law in this circuit, and as my colleague for the government pointed out under the Paulson decision, the effect of invalidating an agency rule is to reinstate the rule previously in force. That occurs by operation of law, absent contrary ruling by the Court. That is what would have happened anyway. There's no question that Judge Ezra vacated a portion of this rule. Now, should appellate jurisdiction turn on the fact that, rather than simply allow the status quo ante to spring back into effect by operation of law, he said, I want you to reinstate the status quo ante, I don't believe that that distinction creates appellate jurisdiction, where it otherwise doesn't exist. It's more than that. It's a hybrid, because in addition to vacating and remanding with respect to various issues, there was also an order, as I indicated earlier, to promulgate a new reg set to take place, and an order to NFS to issue a new biological opinion within 135 days. So I guess it's a hybrid. Correct. But not only a vacater or bucketer, but an order to do various things. So there are aspects of an injunction, and it seems that vacating stuff was simply to clear the board, and then now you do this and that. It cleared the board, and the first thing it did was say, now revert to the status quo ante, which, as we observed, would occur by operation of law anyway. But that's like the first act of an opera. Now we want the second and third acts. Okay, for the second act. That's why Judge Goodwin may be right, because there were orders here. They're proceeding apace, following the orders. They're not just sitting there saying, well, it was vacated, now let's go on vacation. They're doing what the court ordered them to do. They are. However, I would point out that the ordering of a prompt preparation and release of a new biological opinion, whether or not it is in some sense injunctive, didn't prejudice HLA in any way, but in fact it helped it by moving the process along more quickly. They lack standing to appeal that, and they in fact have not appealed it. It's not an issue here. It's a provision, but I don't believe that the appellate jurisdiction turns on it. The issue that HLA has made is, oh, he has forced the government to institute a different rule, when in fact, no, he simply reinstated the same rule that existed from 2004, under which HLA has been operating for the last eight years, and that was that the entire intent was a do-over. As the court said in the Alcee Valley case, in order to find the injunction exception to the rule against interlocutory appeals, the order must have the practical effect of entering an injunction, not, as in this case, reinstating the status quo ante, and it must have serious, perhaps irreparable consequences. HLA hasn't shown it was prejudice one iota by this consent decree, and in fact, as it said in argument, they weren't terribly concerned. They didn't even seek a stay, because they weren't terribly concerned. So where's the irreparable consequences? And it must also be the case that an immediate appeal is the only effective way to challenge the lower court's disposition. That's not the case here. It's very clear that the whole purpose of this consent decree was to allow the government to re-evaluate Amendment 18 and then move forward as quickly as reasonably possible with its re-evaluation. And when it does so, and when it comes out with any new rule, HLA and anybody else, my clients, the public, can challenge that new rule. There has been absolutely no predetermination of what the substance of that rule will be. There has been no denial of anybody's ability to challenge that new rule. All we have here is a do-over that preserves everybody's procedural rights of challenge. So under the Alcee Valley case, lacking all three, in fact, lacking any one of them would deprive the court of jurisdiction, but lacking all three, I think it's clear that the court does not have jurisdiction. And as far as the other grounds for the court's jurisdiction, it would have to be a final order. And I think it's clear under the factors announced by the court in the Collard case that are frequently cited, this is not a final order for purposes of appellate jurisdiction. The end game in this whole thing is the new regulation. Is that what I'm hearing? Yes. Yes. So with respect to finality, there is no separable legal issue that Judge Kessler decided. He didn't decide any legal issues. He entered a consent decree. The remand didn't force NIFS to apply a potentially erroneous rule, which may result in a wasted proceeding. No such rule has been imposed. Thank you very much. Thank you. I'll try not to shout. If you win, what happens? If we win, what happens? Well, it's a little bit complicated, I think, but it would get remanded back to the district court. And there is also a separate lawsuit that was filed against the federal defendants here involving the regulations that were put forward in January. And we had stayed that pending this. So all those can get consolidated and resolved. Is the end game the new regulation? Well, it depends on whether new regulations ever get issued. But apparently they might. They might, and they may not. Well, don't they have to? Nothing in the consent decree requires them to do so. You let this thing continue towards a new regulation because you said you didn't want to hold it up. That's right. So wouldn't you like a new regulation, too? We would like a new regulation, yes. You'll participate in the development of what the new regulation is? Absolutely. It just seems to me that we've gotten involved, and I don't mean any disrespect to anybody or to this lawsuit. But the thing has turned into a bit of a sideshow, and the real game is the process of this towards a new regulation. So I'm a little leery of us getting involved at all, given what the target is. And after the new regulation, there will be a whole other lawsuit. Absolutely. Away we go. Full employment for the entire audience. Let's hear it for the turtles. And so I think the temptation is to, and as you point out, shouldn't we just defer submission on this and wait? And I think the answer is no, and the answer is no because we still haven't even gotten from the federal defendants when this new regulation is going to come into effect. And until that happens, we are under this. We're under it right now. It's in effect right now for vessels that are out there fishing today. It's in effect. Under your view, am I correct, and I don't know if I'm right or wrong, Eric, are you submitting that a court would never be able to settle a claim of this nature? Not at all. A court can settle this claim. There are factual circumstances. Okay. It could answer a consent decree, but in your world, what would that be? So, for example, if there had been a confession of error by the agency, if the agency had said, you know what, district court, we made a serious mistake in here, and that mistake requires us to go redo this, that's a voluntary remand basically at that point. Well, isn't the government here recognizing the problem with the rule or a possible illegality with the rule up front, but it's not certain and the only choice, I guess, is to proceed all the way to trial or withdraw the rule and pull, and isn't this an effective way to deal with it? There's been no confession that there was any error made in this case, and there's been no reason given for the need to withdraw the regulation. Well, but sort of confessing error, they wouldn't be doing this if they didn't think, well, it's possible something could be, you know, problematic here. I think that's a very generous way to look at this. It also could be that the science says one thing and the politics says something else, and it could have been a political decision. And I think, you know, we asked for discovery on this issue so we could get to the bottom of it so we wouldn't be here having you scratch your heads about why the federal government settled this lawsuit. We asked for discovery on that and we were denied by Judge Ezra. Well, on the face of it, it appears that because things were changing with the turtles and their category was being changed. That was never given as a reason why there was a need to revisit the numbers. It was given as a reason as to why we should have the time frame that we have. What was the reason given for having to revisit? The reason given for revisit is the Attorney General can settle litigation when he chooses to do so. That is the reason that they gave, and they said that's the only reason that they need to give, is that the Attorney General has decided that this is the best thing to do. And, you know, all due deference to the Attorney General, there's a limit on when he can do that. And you asked, Judge Trott, about what is that limit, and I'd just like to read you a very brief part from the Local 193 case. The Title 7 case. The Title 7 case. It says, This is not to say that parties may agree to take action that conflicts with or violates the statute upon which the complaint is based. As noted above, the fact that the parties have consented to the relief contained in the decree does not render their actions immune from attack on the ground that it violates Section 703 of Title 7 or the 14th Amendment. Would you like to address the Federal Circuit case or the case of the case of Paulson v. Daniels that suggests that this is a possibility? Those are cases that reach the merits, and when a court reaches the merits, and I think I sort of started with this earlier, when a court reaches the merits, it has a lot more discretion to do things, to vacate rules, to reinstate previous rules, and in the Endangered Species Act context, there's even another level of like, should I actually reinstate the rule? Is it more protective or less protective? And that is simply different than the Attorney General deciding that I've decided I'm going to settle. Thank you very much. Thank you for your oral arguments here today, your presentations. The case is now submitted.
judges: Goodwin, Trott, Murguia, Cjj